ARCH McALLISTER v. THE STATE.

No. 10945.  Delivered October 8, 1927.

**Theft by Bailee—Allegation and Proof—Variance Fatal.**

Where appellant was on trial for embezzlement of an automobile under a contract of borrowing, and the evidence showed conclusively that his possession was under a contract to purchase the car, the variance between the allegation and proof was fatal.

Appeal from the District Court of Taylor County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction for embezzlement, penalty two years in the penitentiary.

The opinion states the case.

*Lee R. York* of Abilene, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is theft by bailee of property over the value of fifty dollars, the punishment confinement in the penitentiary for two years.

Appellant challenges the sufficiency of the evidence. The indictment, which was returned on January 7, 1927, charged appellant with having on the 15th day of November, 1926, as bailee under a contract of borrowing, fraudulently converted to his own use an automobile of the value of $500, belonging to W. Homer Shanks. Appellant was tried and convicted on the

21st day of January, 1927. He defended on the ground that the automobile was delivered to him under a contract of sale, and the court instructed the jury on this issue as follows:

"If the automobile in controversy was delivered to the defendant on the promise of defendant to execute and deliver a deed to W. Homer Shanks of a certain lot, or upon the promise of the defendant to complete certain details of a trade, then such delivery would not be upon a contract of borrowing, and if you so believe or have a reasonable doubt thereof you will acquit the defendant."

The facts upon which the prosecution is based are as follows: Appellant offered to trade a lot to the prosecuting witness for an automobile and $400 in cash, a value of $700 being placed on the automobile by the parties. According to the testimony of the prosecuting witness, appellant stated to him that he had a responsible man who would buy the lot if a house were erected on it. It was agreed by the appellant and witness that appellant would deed the lot to the witness and that the witness would in turn deed it back to appellant, taking appellant's note for $1,100. Further, according to the testimony of the prosecuting witness, appellant assured him that a house would be erected on the lot by a responsible man. It was expected by the parties, according to the testimony of the witness, that the note for $1,100 would be taken up by a loan company within sixty days after the house was built. The testimony of the prosecuting witness is not entirely clear as to the immediate circumstances surrounding his delivery of the car in question to appellant. His first statement is, in substance, that appellant said he was in need of a car and that he, the witness, told appellant to go ahead and use the car before the closing of the trade. Under cross-examination the witness testified that he was to give appellant the car and $400 for the lot, that appellant was to convey him the lot, and that under that contract he turned the car over to appellant. The witness stated that at the time of delivering the car to appellant, which was in November, 1926, appellant talked like the deal would be closed up in two or three days, and that he, the witness, thought the deal was closed or would be closed and that he would never have to take the car back. Further testifying under cross-examination, the witness said: "I did not have any understanding with Mr. McAllister that he would return this car to me when I turned it over to him under this contract of sale. I did not have any understanding with him as to whether it would ever be returned or not. The only thing was he was just to use it. It was just to be his car after I became

satisfied with the solvency of the purchaser of the lot." After the delivery of the car to appellant, it developed that appellant had no record title to the lot he agreed to convey to the prosecuting witness. Appellant used the car and equipped it with new casings, in spite of the fact that, according to the testimony of the prosecutor, he advised appellant that probably he had better not equip the car with new casings until the deal was closed. The trade between the prosecuting witness and appellant was never consummated. Appellant signed a note for $1,100, which he delivered to the prosecuting witness, together with a deed executed by appellant, with a space left blank for the filling in of the description of the lot. An abstract of title to the lot was delivered to prosecuting witness, which failed to show that appellant had title to said lot. On November 27, 1926, the prosecuting witness addressed a letter to appellant in which he advised him that the abstract should be brought down to date. He stated in this letter, among other things, the following: "This will confirm my deal to take the lot at $1,100, $700 of which is to be paid by my Dodge coupe and $400 in cash when you show that the lot will have a house of modern type put on it and bought by a solvent purchaser." The prosecuting witness testified that appellant was to have sixty days to build a house on the lot. He further stated that appellant had sixty days in which to show him (the prosecuting witness) a responsible man who had agreed to take the house and that the main consideration for the trade was the building of a house on the lot. In the latter part of November or early part of December, 1926, search was instituted for appellant by the prosecuting witness and he could not be found. On December 27, 1926, appellant was arrested in Douglas, Arizona, in possession of the car.

Testifying for himself, appellant asserted title to the car, claiming that he had received it under a contract of sale.

The state was required, under the allegations in the indictment, to show that appellant was in possession of the car under a contract of borrowing. The uncontradicted evidence shows that at the time of the delivery of the car the owner and appellant entered into a contract, the terms of which were to be finally complied with at some future date, not then fixed by the parties. As we understand the testimony of the prosecuting witness, it shows that appellant promised to complete certain details of the trade in the future, and that the car was delivered to appellant to be used by him pending the final consummation of the trade. On cross-examination, the prosecuting witness testified that the car was delivered to appellant under the contract of sale made by

him and appellant. This testimony, in our opinion, excludes the idea that appellant came into possession of the car in question under a contract of borrowing. It would follow that the allegation in the indictment that appellant was in possession of the car under a contract of borrowing is not sustained by the evidence.

Because the evidence is insufficient to sustain the judgment of conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.